UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                    Case No. 08-20002
-vs-                                    Hon: AVERN COHN

LEONEL ENRIQUE AGUILERA-PENA,

    Defendant.

_____/

**MEMORANDUM AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS**

I.

This is a criminal case. Defendant Leonel Enrique Aguilera-Pena ("Pena") is charged with possession with intent to distribute a controlled substance - heroin, 21 U.S.C. § 841(a)(1). Now before the Court is Pena's Motion to Suppress directed to statements he made and evidence seized on November 7, 2007, after police stopped his vehicle in the City of Romulus in Wayne County, Michigan. Pena says that the police unreasonably detained him beyond the time necessary to complete the traffic stop and impermissibly seized evidence on which the government intends to rely at trial. The Court held an evidentiary hearing on the motion after which the parties filed supplemental briefs. For the reasons which follow, the Motion to Suppress is DENIED.

II.

Donald Smith ("Smith"), a City of Romulus police officer on routine traffic patrol on November 7, 2007, was contacted by dispatch and asked to make a drug interdiction stop of a white Volkswagen traveling westbound on I-94. Smith located the Volkswagen in the

center lane. Smith saw the Volkswagen weave into the far left lane, come back across the center lane and into the right lane, and then return to the center lane. Smith considered this improper lane use, a civil infraction.

At about noon, Smith stopped the Volkswagen, exited his patrol car, and walked to the driver's side of the Volkswagen. He asked for and obtained the operator's license of the driver, Pena. He asked Pena if there was anything he should know about the inside of the vehicle. Pena said "no." He asked Pena if there was any marijuana or cocaine in the vehicle. Pena again said "no." He asked Pena if there were any large sums of money in the Volkswagen. Pena hesitated in answering, no longer maintaining eye contact with Smith, and answered "no." Smith, based on his experience as a police officer, believed that Pena's hesitation and lack of eye contact indicated a dishonest answer. Smith then asked Pena if he could search the Volkswagen. Pena said "yes." Smith had Pena exit the Volkswagen and patted him down for weapons. At this point E. Troy McCanna ("McCanna"), an FBI agent, pulled his unmarked vehicle to the shoulder and approached Smith and Pena. Smith passed Pena off to McCanna. Smith made a quick search of the interior and trunk of the Volkswagen and then ended his participation in the occurrence. According to Smith, all this took only three to five minutes.

McCanna had prompted the call from dispatch. In the days prior to the stop he had received information from a confidential informant that Pena was staying at a local hotel and was possibly involved in narcotics trafficking. Pena was observed staying in this same hotel for two and a half days without leaving his room. Pena was then observed being driven to a carwash where the Volkswagen was turned over to him. On the way to the carwash, the driver of the car in which Pena was riding appeared to engage in "counter-surveillance"; that is, he made a series of maneuvers, such as making numerous U-turns

2

and quickly accelerating to high rates of speed, designed to reveal whether anyone was following the car. After leaving the carwash in the Volkswagen, Pena was surveilled. McCanna or agents associated with him made the call to dispatch requesting the traffic stop based on their belief that Pena was transporting drugs. When the traffic stop occurred, McCanna pulled over to assist Smith. McCanna explained that, being in an unmarked vehicle, he was not in a position to stop the Volkswagen himself. Also, McCanna wanted to allow Smith sufficient time to identify probable cause to make the stop.

McCanna observed Smith making the stop and Pena exiting the Volkswagen. McCanna exited his vehicle and approached Smith and Pena. McCanna asked Smith if he had consent to search the Volkswagen, and Smith said yes. McCanna then engaged Pena in conversation while the two men stood on the shoulder of the highway, watching Smith conduct the search.

McCanna asked Pena whether or not Smith was going to find anything that he may be concerned with. According to McCanna, Pena appeared nervous and was watching Smith closely. Pena indicated to McCanna that there may be in fact something illegal in the Volkswagen, and said further that he was not certain what it might be. McCanna then asked Pena what would make him believe that. Pena responded that he had been paid $5,000 cash to drive the Volkswagen from Oregon to Detroit and back to Oregon. McCanna asked Pena to clarify his statement about something illegal, and Pena answered that it may have been drugs; he was not certain.

McCanna opined that two common characteristics of drug couriers is that they are not fully informed as to what they are carrying and are paid in cash. Frequently they also do not know the identity of the person paying them.

McCanna's interaction with Pena took approximately five to six minutes.

McCanna said he had probable cause to believe the Volkswagen contained contraband. Because they were on a highway he had the Volkswagen taken to a municipal garage and instructed Pena to accompany him to the garage. Pena was told that he was being detained.

At the garage, the Volkswagen was thoroughly searched. A K-9 dog positively alerted to the presence of narcotic odor near the center console. $400,000 in currency, a Colt firearm, and 175 grams of heroin were found secreted in the Volkswagen.

Pena was then informed he was under arrest.

III.

Pena acknowledges the initial legality of the traffic stop. He argues that once the purpose of the stop had been completed, he could not be further detained unless something occurred during the stop to generate a reasonable suspicion that the driver was involved in criminal activity. Here, Pena says Smith detained him beyond the time necessary to write a ticket and question him. Pena points out that the ticket Smith wrote was written at police headquarters sometime later and that there is no evidence it was even given to Pena.

An ordinary traffic stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979). The Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." United States v. Blair, -- F.3d --, Nos. 06-6036/6037, 2008 WL 1913167 (6th Cir. May 2, 2008). Reasonable suspicion "is more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989). "Reasonable suspicion requires specific and

4

articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." United States v. Smith, 263 F.3d 571, 588 (6th Cir. 2001). "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).

Here, Pena concedes that Smith had probable cause to stop his car for improper lane usage, a civil infraction; Smith witnessed Pena's car weaving between several lanes immediately before initiating the stop. When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant. Whren v. United States, 517 U.S. 806, 813 (1996). "[P]olice officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995).

Pena argues that although the initial traffic stop was permissible, Smith and McCanna unreasonably detained him beyond the time necessary to carry out the purposes of the stop. The facts do not support Pena's position. The law enforcement officers had the requisite reasonable, articulable suspicion to detain Pena for investigative purposes during the traffic stop. See United States v. Erwin, 155 F.3d 818, 822 (6th Cir. 2001). At the outset, it should be noted that reasonable suspicion need not be based solely on facts known to any particular officer, but may be based on the "collective knowledge" of all the officers participating in the investigation. See Collins v. Nagle, 892 F.2d 489, 495 (6th Cir. 1989) (collecting cases); United States v. Townsend, 330 F.3d 438, 441 (6th Cir. 2003) (holding that collective knowledge rule applies to investigative stops as well as arrests); United States v. Pasquarille, 20 F.3d 682, 689 (6th Cir. 1994) (holding that collective

knowledge rule applies where two separate law enforcement agencies cooperate in an investigation).

In this case, Smith and McCanna were together aware of facts more than sufficient to raise a reasonable suspicion that Pena was involved in narcotics trafficking: (1) McCanna knew about an informant's tip that an individual registered at Pena's hotel was involved in narcotics trafficking; (2) an FBI database revealed that the individual that registered for Pena's hotel room was under investigation for narcotics trafficking; (3) Pena was observed staying in his hotel room for two and a half days without leaving; (4) when Pena left the hotel room, he was picked up by a car that proceeded to engage in counter-surveillance driving tactics typical of drug traffickers; (5) the car ultimately dropped Pena at a car wash, where Pena got into a car displaying Oregon license plates and drove off, in a manner consistent with known contraband smuggling techniques; (6) when he was pulled over, Pena gave Smith an out of state driver's license; (7) Pena appeared nervous and did not maintain eye contact when asked about contraband in the car. Taken together, all these facts made it permissible for Smith and McCanna to detain Pena for investigative purposes beyond the time necessary to issue him a ticket for the traffic infraction.

Pena's statements to McCanna while the two stood on the roadside apparently confirmed suspicions that Pena was involved in drug trafficking. These statements should not be suppressed; police officers need not give a formal Miranda warning before questioning suspects during a traffic stop. Berkemer v. McCarthy, 486 U.S. 420, 440 (1984).

The information known to Smith and McCanna prior to the traffic stop, combined with Pena's behavior and statements during the traffic stop, gave the officers reasonable suspicion to detain Pena and conduct a more thorough search of the vehicle.

For all the reasons stated above, Pena's motion to suppress is DENIED.

SO ORDERED.

                                    s/Avern Cohn
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE

Dated: May 14, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 14, 2008, by electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5160